**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| RICHARD LAWRENCE, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| STEEL CONNECT, INC., WARREN G. LICHTENSTEIN, GLEN M. KASSAN, JACK L. HOWARD, JEFFREY J. FENTON, JEFFREY S. WALD, MARIA MOLLAND, and RENATA SIMRIL, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Richard Lawrence ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Stee; Connect, Inc. ("Steel Connect" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Steel Partners Holdings L.P. ("Steel Partners") through its wholly owned subsidiary SP Merger Sub, Inc. ("Merger Sub").[1]

2. On June 12, 2022, the Company entered into an Agreement and Plan of Merger

---

[1] The proposed acquisition of Steel Connect described herein is referred to as the "Proposed Transaction."

with Steel Connect and Merger Sub (the "Merger Agreement").[2] The Merger Agreement provides Steel Partners will acquire the shares of Steel Connect it does not already own for $1.35 per share in cash and one contingent value right ("CVR") to receive their *pro rata* share of net proceeds, to the extent such net proceeds exceed $80 million plus certain related costs and expenses, if Steel Connect's ModusLink Corporation ("ModusLink") subsidiary is sold during the two-year period following consummation of the Proposed Transaction.

3. The Company's corporate directors subsequently authorized the August 23, 2022 filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants'

---

[2] Steel Partners, together with its affiliates, beneficially owns approximately 50% of the Company's outstanding voting securities.

[3] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for September 30, 2022.

violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of STEEL CONNECT common stock.

10. Defendant Steel Connect is a Delaware corporation with its principal executive offices located at 2000 Midway Lane, Smyrna, Tennessee 37167. Steel Connect's shares trade on the Nasdaq Capital Market under the ticker symbol "STCN." Founded in 1986, Steel Connect is a holding company which operates through its wholly owned subsidiary, ModusLink. ModusLink serves the supply chain management market, providing digital and physical supply chain solutions to many of the world's leading brands across a diverse range of industries, including consumer electronics, telecommunications, computing and storage, software and content, consumer packaged goods, medical devices, retail and luxury and connected devices. The Company was

formerly known as ModusLink Global Solutions, Inc. and changed its name to Steel Connect, Inc. in February 2018.

11. Defendant Warren G. Lichtenstein ("Lichtenstein") has been Steel Connect's Interim Chief Executive Officer, Executive Chairman and a director of the Company at all times relevant hereto. Defendant Lichtenstein is also the Executive Chairman of Steel Partners and beneficially owns approximately 50.3% of its outstanding limited partnership units.

12. Defendant Glen M. Kassan ("Kassan") is and has been Vice Chairman of the Board and a director of the Company at all times relevant hereto. Defendant Kassan has been associated with affiliates of Steel Partners since August 1999.

13. Defendant Jack L. Howard ("Howard") is and has been a director of the Company at all times relevant hereto. Defendant Howard is also the President of Steel Partners and beneficially owns approximately 20.7% of its outstanding limited partnership units.

14. Defendant Jeffrey J. Fenton is and has been a director of the Company at all times relevant hereto.

15. Defendant Jeffrey S. Wald is and has been a director of the Company at all times relevant hereto.

16. Defendant Maria Molland ("Molland") is and has been a director of the Company at all times relevant hereto. Defendant Molland is also a member of the special committee of the Company's board of directors formed to consider the Proposed Transaction (the "Special Committee").

17. Defendant Renata Simril ("Simril") is and has been a director of the Company at all times relevant hereto. Defendant Simril is also a member of the Special Committee.

18.     Defendant Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19.     On June 13, 2022, Steel Connect and Steel Partners jointly announced in relevant part:

> NEW YORK & SMYRNA, Tenn.--(BUSINESS WIRE)--Steel Partners Holdings L.P. (NYSE: SPLP), a diversified global holding company ("Steel Partners") and Steel Connect, Inc. (NASDAQ: STCN) ("Steel Connect") today announced that they have signed a definitive merger agreement pursuant to which Steel Partners will acquire the remaining common stock of Steel Connect issued and outstanding immediately prior to the effective time of the merger. The holders of Steel Connect's outstanding shares of common stock will receive US $1.35 per share in cash and one contingent value right ("CVR") to receive their pro rata share of net proceeds, to the extent such net proceeds exceed $80 million plus certain related costs and expenses, if Steel Connect's ModusLink subsidiary is sold during the two-year period following completion of the merger.
>
> Steel Connect's Board of Directors, acting on the unanimous recommendation of the special committee of the Board of Directors (the "Special Committee"), and the Board of Directors of Steel Partners' General Partner approved the merger agreement and the transactions contemplated by the merger agreement and resolved to recommend the stockholders adopt the merger agreement and approve the transactions contemplated by the merger agreement.  The Special Committee, which is comprised solely of independent and disinterested directors of Steel Connect who are unaffiliated with Steel Partners, exclusively negotiated the terms of the merger agreement with Steel Partners, with the assistance of its independent financial and legal advisors.
>
> Upon closing of the merger, Steel Connect will become a wholly owned subsidiary of Steel Partners.  The merger is subject to approval by Steel Connect's stockholders, as well as certain other customary closing conditions.  The merger is not subject to a financing condition, and is expected to occur in the second half of 2022.  Steel Connect will call a meeting of its stockholders for the purpose of voting on the adoption of the merger agreement in due course.
>
> The merger agreement includes a "go-shop" period that expires at 11:59 p.m. Eastern time on July 12, 2022, during which Steel Connect may actively solicit and

consider alternative acquisition proposals.  There can be no assurances that the "go-shop" process will result in a superior proposal, and Steel Connect does not intend to communicate developments regarding the process unless and until Steel Connect determines that additional disclosure is required or desirable.

**Advisors**

Houlihan Lokey is serving as the financial advisor to the Special Committee of Steel Connect, and Imperial Capital is serving as the financial advisor to Steel Partners.  Dentons US LLP is serving as legal counsel to the Special Committee and White & Case LLP is serving as legal counsel to Steel Connect.  Greenberg Traurig, LLP is serving as legal counsel to Steel Partners.

**The Materially Incomplete and Misleading Proxy Statement**

20.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on August 23, 2022.  The Proxy Statement, which recommends that Steel Connect stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts and the financial analyses underlying the fairness opinion provided by Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), financial advisor to the Special Committee; (b) potential conflicts of interest faced by Houlihan Lokey; and (c) the go-shop process.

*Material Misrepresentations and/or Omissions Concerning Financial Forecasts for Steel Connect and Houlihan Lokey's Financial Analyses*

21.     The Proxy Statement fails to disclose material information concerning the financial forecasts for Steel Connect.  For instance, the Proxy Statement fails to disclose a summary of the previous sets of ModusLink management's "ModusLink Projections" for the ModusLink segment, as presented to the Special Committee or provided to Houlihan Lokey for use in its analysis.  The Proxy Statement further fails to disclose the changes made to the respective projection sets to arrive at the final "ModusLink Projections" utilized by Houlihan Lokey in connection with its

fairness opinion. The changes include, but are not limited to, the revisions discussed at the October 6, 2021, October 21, 2021, March 24, 2022, June 8, 2022, and June 10, 2022 Special Committee meetings.[4]

22. Similarly, with respect to Company management's "Corporate Expense Projections" and "NOL Projections" for the Company's corporate expenses and projected net operating loss ("NOL") usage, respectively, the Proxy Statement fails to disclose a summary of the previous projection sets presented to the Special Committee or provided Houlihan Lokey for use in its analysis, and a description of the changes made to the respective projection sets to arrive at the final "Corporate Expense Projections" and "NOL Projections" utilized by Houlihan Lokey in connection with its fairness opinion, including, but not limited to, the revisions discussed at the March 24, 2022, April 6, 2022, and June 8, 2022 Special Committee meetings.[5]

23. The Proxy Statement also fails to disclose the "methodology and assumptions utilized by [ModusLink] management in preparing the financial projections" as explained by ModusLink management to the Special Committee at its June 10, 2022 meeting.[6]

24. The Proxy Statement further fails to disclose the projected unlevered, free cash flows that ModusLink was forecasted to generate for the fiscal year ending July 31, 2022 through the fiscal year ending July 31, 2025 utilized by Houlihan Lokey in connection with its *Discounted Cash Flow Analysis*, how the unlevered free cash flows were calculated, and the underlying projection line items.

---

[4] *See* Proxy Statement at 21, 23, 25-26.

[5] *See id.* at 23-25.

[6] *See id.* at 26.

25. With respect to the *Discounted Cash Flow Analysis* performed by Houlihan Lokey, the Proxy Statement fails to disclose: (a) Steel Connect's terminal values; (b) the inputs and assumptions underlying the range of discount rates Houlihan Lokey used in connection with the analysis (c) ModusLink's outstanding balance of cash and cash equivalents as of April 30, 2022; and (d) the impact of the outstanding balances of cash and cash equivalents, IWCO subordinated note, convertible note payable, and Series C convertible preferred stock as of April 30, 2022 incorporated into the analysis.

26. With respect to the *Selected Companies* and *Selected Transactions Analyses* performed by Houlihan Lokey, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies and transactions analyzed by the Special Committee's financial advisor, respectively including the projected future after-tax cash flows that the Company could be expected to generate from its proved reserves ("Low Case") and proved and probable reserves ("Base Case" and "High Case," with the latter reflecting a risked upside to the proved and probable reserves) utilized by Houlihan Lokey in connection with its *Discounted Cash Flow Analysis* of Steel Connect, and the underlying projection line items.

*Material Misrepresentations and/or Omissions Concerning Houlihan Lokey's Potential Conflicts of Interest*

27. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Houlihan Lokey, including the details of any services Houlihan Lokey has provided to the Company or Steel Partners, and their respective affiliates, in the two years preceding the date of its fairness opinion and the amount of compensation Houlihan Lokey has received for any such services provided.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

28. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction, and specifically with respect to the "go-shop process" conducted by Houlihan Lokey. Specifically, the Proxy Statement fails to disclose whether the Company entered into confidentiality agreements with any parties contacted during the go-shop process and, if so, whether any of the confidentiality agreements contain a currently effective "don't-ask, don't-waive" standstill provision that is precluding a party from submitting a topping bid for the Company.

29. In sum, the omission of the above-referenced information renders statements in the "Projected Financial Information," "Opinion of Houlihan Lokey Capital, Inc., Financial Advisor to the Special Committee," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Steel Connect will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Steel Connect**

30. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading,

9

in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Steel Connect is liable as the issuer of these statements.

32. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Steel Connect within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Steel Connect and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

42. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 16, 2022

By **LONG LAW, LLC**

*/s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*